IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-45-FL-KS

| | | |
|---|---|---|
| KIMBERLY COLLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, it is recommended that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

Plaintiff applied for DIB and SSI on September 24, 2021, with an alleged onset date of September 6, 2021. (R. 84, 367–83.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 84, 199, 210, 221, 234, 283–84.) A telephonic hearing was held on February 3, 2023, before Administrative Law Judge ("ALJ") William Anderson, who ordered a physical consultative examination. (R. 173–98.) A second telephonic hearing was held on October 19, 2023, before ALJ Wanda Wright,[2] who issued an unfavorable ruling on February 15, 2024. (R. 84–107, 133–71.) On December 3, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff initiated this action on January 31, 2025, seeking judicial review of the final administrative decision.

## DISCUSSION

### I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind

---

[2] ALJ Wright stated that the case had been reassigned to her because ALJ Anderson was not available to preside over the follow-up hearing. (R. 138–39.)

might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the

first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter related to the DIB claim, the ALJ found that Plaintiff meets the insured status requirements of the Act through September 30, 2025. (R. 86.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 6, 2021, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of obesity, diabetes mellitus, lumbar spinal stenosis, fibromyalgia, chronic pain syndrome, hypertension, and anxiety and depression disorders. (R. 87.)

At step three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 87.) The ALJ

4

expressly considered Listings 1.15, 12.04, and 12.06. (R. 87–90.) The ALJ also considered Plaintiff's obesity in connection with SSR 19–2p. (R. 88.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] should avoid concentrated exposure to extreme heat, noise, and vibration. [Plaintiff] could occasionally reach overhead with the right upper extremity, the dominant upper extremity. [Plaintiff] could occasionally balance, stoop, kneel, crouch, or crawl. [Plaintiff] could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid concentrated exposure to unprotected heights, moving machinery, and hazardous machinery. [Plaintiff] requires a handheld assistive device. [Plaintiff] requires a sit/stand option at 30-minute intervals. [Plaintiff] can understand, remember, and carry out simple instructions, occasionally interact with co-workers and supervisors, occasionally interact with the general public, can use judgment to make simple work-related decisions, and can occasionally deal with changes in a routine work setting.

(R. 90.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 91.) At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 99.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: office helper (DOT #239.567-010), garment sorter (DOT #222.687-014), and merchandise marker (DOT #209.587-034).

5

(R. 100–01.) The ALJ concluded that Plaintiff has not been disabled under the Act since September 6, 2021. (R. 101.)

### IV.    Plaintiff's Arguments

Plaintiff contends the ALJ erred

(A)    by improperly evaluating the effect of Plaintiff's fibromyalgia on the RFC assessment (Pl.'s Br. [DE #14] at 5–10); and

(B)    in her step-five findings because it is unclear whether Plaintiff's need for an assistive device (cane) would preclude Plaintiff's ability to perform the jobs identified at step five (*id.* at 10–12).

For the reasons explained below, the undersigned agrees with Plaintiff as to both issues, and, therefore, recommends remand to the Commissioner.

### A.    Fibromyalgia

Plaintiff contends the ALJ improperly evaluated her fibromyalgia symptoms under *Arakas v. Comm'r of SSA*, 983 F.3d 83 (4th Cir. 2020), and its progeny, by relying on the lack of objective evidence to discount Plaintiff's statements about her symptoms. Since the conclusion of briefing in this case, the Fourth Circuit has issued another published opinion on the proper evaluation of fibromyalgia in Social Security disability cases, *Hultz v. Bisignano*, 162 F.4th 111 (4th Cir. 2025), which bolsters Plaintiff's position. This matter should be remanded because ALJ Wright improperly evaluated Plaintiff's fibromyalgia.

ALJ Wright found Plaintiff's fibromyalgia to be a severe impairment. (R. 87.) When assessing Plaintiff's RFC, ALJ Wright heavily relied on the lack of objective evidence to discount Plaintiff's statements about her fibromyalgia symptoms. (R. 93–94); *cf. Hultz*, 162 F.4th at 122 ("Under *Arakas*, the ALJ failed to apply the correct

legal standard when the decision heavily relied on objective medical criteria to assess Ms. Hultz's fibromyalgia."). Notably, ALJ Wright stated that "the lack of a sufficient diagnostic basis adversely affects [Plaintiff's] allegations" and "there are no records from a rheumatologist for expertise in treating symptoms of fibromyalgia." (R. 93.) ALJ Wright also used the precise language flagged as problematic by *Hultz*, 162 F. 4th at 122, and *Arakas*, 983 F.3d at 94, 96. (R. 91.) Lastly, ALJ Wright's reliance on the lack of specialist treatment from a rheumatologist to discount Plaintiff's statements is specifically proscribed by *Hultz*, 162 F.4th at 124 ("Given that there is no treatment for fibromyalgia and painkilling medication may worsen the condition over time, a fibromyalgia patient may reasonably lapse in office visits or choose to forgo them altogether."). Accordingly, remand is necessary.

### B. Step Five and Handheld Assistive Device

In the RFC assessment, ALJ Wright determined that Plaintiff "requires a handheld assistive device." (R. 90.) However, ALJ Wright did not explain under what circumstances or for what purposes Plaintiff needs the assistive device, as instructed by SSR 96–9p, 1996 WL 374185, at *7 (July 2, 1996). (R. 93.) This is important because the vocational expert ("VE"), upon whose testimony ALJ Wright relied at step five, testified that the jobs identified at step five would be precluded if the handheld assistive device was "needed for standing and walking." (R. 169.) Without an explanation from ALJ Wright about the circumstances or purposes for which Plaintiff needs a handheld assistive device, meaningful review is frustrated. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (holding that an ALJ must

7

"include a narrative discussion describing how the evidence supports each conclusion" in the RFC (quoting *Mascio*, 780 F.3d at 636)).  Accordingly, remand is necessary.

CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be REVERSED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 3, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

8

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 16th day of February 2026.

KIMBERLY A. SWANK
United States Magistrate Judge

Case 5:25-cv-00045-FL    Document 17    Filed 02/17/26    Page 9 of 9